IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FLEMMING HOFF, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL CASE NO. H-23-00041 |
| | § | |
| MERIDIAN SECURITY INSURANCE | § | |
| COMPANY and BRANDON CORMIER, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Flemming Hoff sued Meridian Security Insurance after Meridian's agent, Brandon Cormier, valued the damage to Hoff's home following a storm at an amount less than Hoff's insurance policy deductible. (Docket Entry No. 14 ¶¶ 13). After filing suit, Hoff requested an appraisal. The appraisal panel awarded an amount above the policy deductible. Meridian refused to pay the appraisal-award amount. Hoff has moved for partial summary judgment, arguing that the appraisal award entitles him to judgment on his breach of contract claim as to liability and sets the damages amount. (Docket Entry No. 17). Hoff also argues that Meridian's continued refusal to pay the claim entitles him to statutory interest and attorney's fees under the Texas Prompt Payment of Claims Act. TEX. INS. CODE § 542.051 *et seq.* Granting Hoff's motion would leave only his bad faith and attorney's fee claims.

The defendants have filed a motion for summary judgment, arguing that the undisputed facts show that Hoff cannot prove that any loss occurred during the coverage period of November 1, 2020, to November 1, 2021. (Docket Entry No. 23). The defendants have also moved to strike the opinions and testimony of Hoff's expert, Neil B. Hall, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow. Pharms., Inc.*, 509 U.S. 579 (1993). (Docket Entry No. 25).

Based on the parties' briefs, the record, and the relevant law, the court denies Meridian's motion to strike and Hoff's motion for partial summary judgment. The court denies Meridian's motion for summary judgment with respect to Hall's breach of contract claim, and otherwise grants the motion. The reasons are set out below.

**I.     The Rule 56 Standard**

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial."  *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted).  "However[,] the movant 'need not negate the elements of the nonmovant's case.'"  *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).  "If 'reasonable minds could differ' on 'the import of the evidence,' a court

must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

## II. Analysis

### A. Meridian's Motion to Strike (Docket Entry No. 25)

As the Supreme Court recognized in *Daubert*, "there is a specific [Federal] Rule [of Evidence] that speaks to the contested issue" of the admissibility of expert testimony, Rule 702. That rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*Daubert*, 509 U.S. at 588 (quoting FED. R. EVID. 702). The *Daubert* Court found that the promulgation of the Federal Rules of Evidence, and its relevancy standard, abrogated decisions holding expert testimony to a higher, "general acceptance," standard. The Court provided several factors for courts to consider when evaluating the admissibility of scientific expert testimony, including whether a theory or technique is properly "scientific" and has been subject to empirical

3

testing, "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," and whether the theory has met with "general acceptance." *Id.* at 592–94. The Court made clear that these factors are not a "definitive checklist or test," *id.* at 593, and must be tied to the facts of the case. *Id* at 591.

The holding in *Daubert* itself focused on "the admissibility of *scientific* expert testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). In *Carmichael*, the Court held that "*Daubert*'s general holding . . . applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Id.* The Court reasoned that

> it would prove difficult, if not impossible, for judges to administer evidentiary rules under which a gatekeeping obligation depended upon a distinction between "scientific" knowledge and "technical" or "other specialized" knowledge. There is no clear line that divides the one from the others. Disciplines such as engineering rest upon scientific knowledge. Pure scientific theory itself may depend for its development upon observation and properly engineered machinery. And conceptual efforts to distinguish the two are unlikely to produce clear legal lines capable of application in particular cases.

*Id.* at 148. Although certain kinds of expert testimony necessarily "focus[] upon specialized observations," the trial court must still "assure that the specialized testimony is reliable and relevant." *Id.* at 149.

*Carmichael* concerned expert testimony submitted by the plaintiff supporting his theory that a defect in the defendant's tires caused a blow out leading to a fatal accident. *Id.* at 142. The expert assumed that the plaintiff's tire had traveled a significant distance before the accident. *Id.* The expert's conclusion that the tire was defective operated on the premise that "if a separation [of the tread from the inner tire "carcass"] is *not* caused by a certain kind of tire misuse . . . then, ordinarily, its cause is a tire defect." *Id.* at 144. Evidence of such misuse, called "overdeflection," would be revealed by "physical symptoms," such as inconsistent wear patterns, signs of a "bead

4

groove," sidewalls with signs of deterioration, and marks on the tire's rim flange. *Id.* The expert stated that if he did not find at least two of these symptoms, then some kind of defect caused the separation. *Id.* The expert did in fact find at least two symptoms, but, because the expert found they were "not significant," he concluded that the separation was not caused by overdeflection. *Id.* at 145.

The Court affirmed the trial court's disallowance of the testimony. The Court noted that the expert could not in fact determine how far the tire had travelled—he had simply assumed extensive wear. *Id.* at 154–55. The Court found the expert's testimony contradictory and that it undermined the theory outlined in his report. *Id.* at 155–56. The Court believed the trial court had correctly evaluated the testimony under *Daubert*, while at the same time emphasizing that there was no rule against some expert testimony grounded in "a set of observations based on extensive and specialized experience." *Id.* at 156.

Here, the plaintiff's expert, Neil Hall, evaluated weather data and conducted a physical inspection of the Hoff home in February 2023. (*See* Docket Entry No. 26-2 (Hall Report) at 2). Meridian does not question Hall's qualifications. Hall used the claimed loss date of April 15, 2021, "as the starting point for [his] analysis." (*Id.*) He searched meteorological databases for reports of hail-caused damage in the area surrounding the Hoff home from April 15, 2019 through apparently the latest date for which data was available. *Id.* He also reviewed databases that use radar to determine weather conditions such as hail. (*Id.* at 3). Hall concluded that "[w]ithout further information, there is no compelling reason to change the date of loss from the reported date of loss on April 15, 2021." (*Id.* at 4). Hall's physical inspection of the house revealed damage cause by wind and hail that he believes may have led to the leak reported by Hoff. (*Id.* at 4–5).

5

Meridian deposed Hall and asked him why he only considered hail strikes from two years before the reported date of loss through the period for which data was available. Hall responded:

> I use two years because any hail damage I find on site older than two years, typically, I'm going to be able to tell by evaluation, visual examination it's older than two years. If it's missing granules on asphalt shingles, the asphalt is going to be gray. If it's metal on a dent, it's going to have started to rust. So older than two years, I don't need to research if there's a hailstorm, because when I'm on that roof, I'm not going to consider any hail damage older than two years. I'm concerned with that tight window of two years old to the present time. That's where I can't actually discern if it's old or new damage and I need the old hail information from eyewitness accounts and radar to help me reach that conclusion.

(Docket Entry No. 26-3 (Hall Depo.) at 81:4–18; *see also id.* at 85:6–19). Meridian's counsel asked whether Hall knew of studies supportive of the results of his visual inspection. Hall responded that there are studies from the Institute of Business and Home Safety looking at how building materials change when exposed to environmental conditions, but that the remainder of his analysis was based on his developed "sense of what hail damage looks like over time" after 40 years of industry experience. (*Id.* at 155:24–156:19). He acknowledged that the two-year marker is an "approximat[ion]" and a "rule of thumb" in determining the overall state of the roof. (*Id.* at 86:4–15). Hall reiterated that any expert asked to estimate the age of hail damage would necessarily rely on his or her "knowledge, training, and experience," because there is not a body of scientific literature addressing the issue. (*Id.* at 158:22–159:9).

Meridian argues that Hall's conclusion that hail damaged the Hoff home on April 15, 2021, is based on unverified methodology and speculation. But Hall's report and testimony demonstrate that Hall used a methodology substantially similar to Meridian's own expert, Abdul Shaik of Donan Engineering. Shaik also reviewed weather data, noting that these data "are not direct evidence of hail size or guaranteed hail fall at any location." (Docket Entry No. 21-6 (Shaik Report) at 00472). Shaik—and Hall—found that, "[o]n April 15, 2021, two hail[] events with a hail of 0.88 inches in diameter w[ere] reported within 10 miles of [the Hoff] property." (*Id.* at

6

00474.) Shaik stated that visible hail damage causes "blemishes [that] do not typically change in size over time, nor does the shingle slowly develop hail-related fractures with age after the hail event." (*Id.* at 00477). Shaik provided no citation for this proposition, although he did support his statements about the size of hailstones required to cause certain kinds of damage. Shaik's own physical inspection led him to conclude that "hail up to 1/2 inch in diameter fell at this property." (*Id.* at 00481). The weather data led him to conclude that "hail up to 1 inch in diameter was reported within 10 miles of the property on April 15, 2021," but that, "since hailfall occurs in localized pockets or swaths, on-site collateral indicators provide the most conclusive evidence of hail size at any given location." (*Id.*).

The experts disagree as to what the physical inspection of the property could reveal. Neither can say with certainty whether hail struck the home on April 15, 2021. Hall's opinions about the age of damage to the home are obvious targets for cross examination. But, given Hall's significant experience and the objective markers (such as rust) he used to formulate his opinions, striking his testimony is unwarranted. Unlike the expert in *Carmichael*, Hall's conclusion appears to follow from his premises. Meridian disputes those premises, but its concerns with Hall's testimony are best addressed through cross-examination and its own expert's testimony.

The court denies the motion to strike.

**B. The Parties' Motions for Summary Judgment**

**1. Hoff's Motion for Partial Summary Judgment**

Hoff argues that the appraisal award reflects not only the amount of loss, but also Meridian's coverage liability. Meridian disputes that the issuance of the award is conclusive evidence that Hoff's claim is covered under the policy. Meridian argues that the appraisal award provides an estimate of the property damage but does not determine whether that damage is

7

covered. (Docket Entry No. 21 ¶¶ 1–2). Meridian notes that the appraisers did not determine when or how the damage arose. (*Id.* ¶ 2).

The policy Meridian issued to Hoff contains the following appraisal provision:

> If you [Hoff] and we [Meridian] disagree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

(Docket Entry No. 17-1 at Appx. 0080).

Hoff submits the letters he exchanged with Meridian demanding appraisal and each party's nomination of an appraiser. (*Id.* at Appx. 001–2). Hoff's letter identifies the "DOL," presumably, the "date of loss," as April 15, 2021. (*Id.* at Appx. 001). Meridian's letter identifies April 15, 2021, as the "Reported Loss Date." (*Id.* at Appx. 002).

The appraisers submitted their award and schedules detailing the expenses and the total appraisal amount. The documents identify the "Date of Loss" as April 15, 2021, and identify the "Type of Loss" as "hail and wind damage." (*Id.* at Appx. 0003). The award itself provided $21,784.01 as the amount of loss, reflecting a replacement cost of $30,738.15, less $8,954.14 in depreciation. (*Id.* at Appx. 0012). The award does not contain any statement from the appraisers that, for example, they only evaluated damage that occurred on or about April 15, 2021, or that the appraisal amount reflects any apportionment between uncovered and covered losses. Below the appraisers' signatures, the award states:

> This award is made without consideration of any deductibles or prior payments. Such deductibles and prior payments will be subtracted from any payments due and owing as a result of the entry of this award. This award is made subject to all the

8

terms, conditions, and exclusions of the policy which may be the subject of this appraisal.

(*Id.*).

The court agrees with Meridian that the award does not establish liability for a covered loss under the policy. Hoff's position that the award does establish liability is based on decisions holding that some—not all—causation determinations are within the scope of an appraisal conducted in accordance with an insurance policy. These decisions are readily distinguishable. In *State Farm Lloyds v. Johnson*, 290 S.W.3d 886 (Tex. 2009), the Texas Supreme Court resolved the parties' dispute over the scope of an appraisal that had not yet been conducted. The parties apparently did not dispute that the plaintiff's roof had been damaged by a particular storm. *See id.* at 887 ("A hailstorm moved through Plano, Texas in April of 2003, damaging the roof of Becky Ann Johnson's home. She filed a claim under her homeowners insurance policy with State Farm Lloyds. State Farm's inspector concluded that hail had damaged only the ridgeline of her roof, and estimated repair costs at $499.50 (less than the policy's $1,477 deductible). By contrast, Johnson's roofing contractor concluded the entire roof needed to be replaced at a cost of more than $13,000."). The insurer refused to participate in the appraisal process because, it contended, "the parties' dispute concerned causation and not 'amount of loss.'" *Id.* at 888. The court acknowledged that while, in some situations, "[t]he line between liability and damage questions may not always be clear[,] . . . . the scope of appraisal is damages, not liability." *Id.* at 890. The court concluded that the insurer needed to participate in the appraisal process. *Id.* at 895.

The "unusual posture," *id.* at 893, of the *Johnson* case is not present here. In that case, a party refused to participate in the appraisal process because it believed that the appraisal would amount to a finding on liability. The court reaffirmed that appraisals assess damages, not liability, and found no justification for the insurer's refusal to participate without a showing that the

9

appraisal process would be flawed by deciding issues beyond the scope of a proper appraisal. Here, the parties participated in the appraisal process. The appraisers issued an award as to the amount of the insured's damages, not whether the insurer was liable to pay that amount as a covered loss.

The other cases Hoff cites do not help him. In *United Neurology*, the court affirmed that the appraiser properly considered whether the plaintiff failed to mitigate damages in determining the award amount. *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 995 F. Supp. 2d 647, 657 (S.D. Tex. 2014) ("[T]he Hartford appraiser and the umpire were within their authority to consider causation in this context and to segregate uncovered damage in order to determine the amount of the covered loss."). That is, the appraisers properly evaluated whether certain damage was a covered loss or the product of post-loss neglect. The appraisers here made no effort to determine whether the loss occurred during the coverage period, and they did not state that Hoff's policy covered the claimed loss.

The issue in *TMM* was different from the issue presented here. In *TMM,* the appraisers agreed on some issues, and the parties disputed whether the umpire could exclude a category of damages from the award with respect to which the appraisers had agreed. The parties also disputed whether the appraisers could consider causation issues. The court in *TMM* agreed that the umpire could not decide an issue that the panel had already determined. *TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 472 (5th Cir. 2013). The court found that the appraisers did not exceed their authority when they attributed certain damage to "improper installation" of the roof and other damage to "rocks thrown from below" through a skylight. *Id.* at 475. The appraisers in this case did not find the date when the damage occurred. While the supporting materials to the award indicate that the appraisers considered April 15, 2021, as the date of loss, nothing in the award

10

suggests that the appraisers segregated any damage from the total appraisal amount because that damage occurred on a different date. The award did state the roof's replacement cost, less depreciation, but did not separate what damage was covered from what was not based on the date of loss.

Hoff's motion for partial summary judgment is denied.

### 2. Meridian's Motion for Summary Judgment

Meridian argues that Hoff cannot show that a covered loss occurred during the policy period. (Docket Entry No. 23 ¶ 18). Meridian points to Hoff's failure to recall whether hail fell on the date he claimed and argues that "there is substantial evidence that no hail fell at the Property on the claimed date of loss." (*Id.* ¶ 20). Meridian notes that Hoff's expert, Hall, could not find data showing that hail fell on Hoff's property on that date. (*Id.* ¶ 21). Meridian also points to the engineers' findings of age-related roof damage as "evidence that there are applicable exclusions in the Policy." (*Id.* ¶ 24). Hoff's opposition to Meridian's motion incorporates the arguments made in his own motion for partial summary judgment and his opposition to Meridian's motion to strike.

The court has not excluded Hall's testimony. The record shows factual disputes material to determining whether Hoff's roof was damaged during the policy period. Hall's opinions, based in part on his own experience in evaluating the age of room damage, support an April 15, 2023, date of loss, or at least a date of loss during the policy period. The meteorological data in evidence does not conclusively prove or refute this opinion. The court accordingly denies summary judgment on the contract claim.

The court agrees with Meridian that Hoff has failed to present or point to evidence creating a material factual dispute as to his remaining claims. Hoff's opposition presents the appraisal award as evidence of Meridian's potential extracontractual liability, but Hoff does not otherwise

11

respond to Meridian's arguments on his extracontractual claims. As discussed above, the appraisal award did not amount to a liability finding and Meridian did not expose itself to extracontractual damages by not immediately paying the appraisal amount. Meridian promptly investigated the purported loss, issued a denial letter, and did not resist Hoff's appraisal demand. Meridian has offered reasonable defenses to coverage. Whether those defenses prevail is a matter for the trier of fact.

### III.     Conclusion

Meridian's motion to strike, (Docket Entry No. 25), and Hoff's motion for partial summary judgment, (Docket Entry No. 17), are denied. Meridian's motion for summary judgment, (Docket Entry No. 23), on Hoff's extracontractual claims is granted, and the motion is otherwise denied.

SIGNED on August 11, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge